# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 17-cv-1750-WJM-NYW

CHRIS SEVIER,
JOAN GRACE HARLEY,
JOHN GUNTER, JR., and
WHITNEY KOHL,

    Plaintiffs,

v.

JOHN HICKENLOOPER, in his Official Capacity as Governor of Colorado,
CYNTHIA COFFMAN, in her Official Capacity as Attorney General,
MATT CRANE, in his Capacity as Supervisor Marriage License and County Recorder of Arapahoe County,
STACY WORTHINGTON, in her Capacity as Assistant Attorney General in Colorado, and
AUBREY ELENIS, Director of the Colorado Civil Rights Division,

    Defendants.

---

Civil Action No. 17-cv-1666-WJM-NYW

JOAN GRACE HARLEY,
CHRIS SEVIER,
JOHN GUNTER, JR., and
WHITNEY KOHL,

    Plaintiffs,

v.

MASTERPIECE CAKE SHOP LTD. and
JACK PHILLIPS,

    Defendants.

---

## ORDER DENYING MOTIONS TO RECUSE

Now before the Court are the "Motion to Recuse the Magistrate and Motion to Reassign" filed by Plaintiff Sevier ("Sevier") in Case No. 17-cv-1750-WJM-NYW (ECF No. 94) and the "Motion to Recuse the Magistrate" filed by Sevier in Case No. 17-cv-1666-WJM-NYW (ECF No. 90) (together, the "Motions"). The Motions are substantially identical, were filed at the same time, and both seek the recusal or disqualification of U.S. Magistrate Judge Nina Y. Wang and the undersigned under 28 U.S.C. § 455(a). The two Motions are properly resolved together and both are denied.[1]

Initially, both Motions could be stricken for violation of the Court's Order on Pending Filings and Case Procedures, which ordered Sevier and other Plaintiffs to "**immediately** desist from any further *ad hominem* attacks, insults or threats against any judicial officer of this Court in their filings."[2] These Orders were entered on September 29, 2017. Less than two weeks later, Sevier filed the present Motions, which consist of almost nothing but groundless and repetitive *ad hominem* attacks.[3] Sevier's Motions

---

[1] Unless noted otherwise, the Court's citations herein are to docket entries ("ECF No.") in Case No. 17-cv-1750-WJM-NYW (ECF No. 94). The relevant filings in Case No. 17-cv-1666-WJM-NYW are largely parallel, and the Court's findings and rulings apply equally in both cases.

[2] ECF No. 80 in Case No. 17-cv-1750-WJM-NYW and ECF No. 80 in Case No. 17-cv-1666-WJM-NYW (emphasis as in originals).

[3] *See, e.g.* ECF No. 94 at 3 ("There is no other way to describe [Judge Wang's] conduct . . . than partial."); *id.* (attacking Judge Wang's "self-interested scheming"); *id.* at 4 (describing Judge Wang as a "deer in headlights"); *id.* (accusing Judge Wang of "egotistic[al]...judicial putsch" and being "a threat to American Democracy"); *id.* at 4 n.2 (arguing the undersigned and Judge Wang have "no business being involved in the Judiciary"); *id.* at 4 n.4 ("if the District Court has an emotional problem with the Plaintiffs suspecting the Magistrate of engaging in 'Black Robed Supremacy,' he can blame the Secular Humanists on the Supreme Court"); *id.* at 5 (accusing Judge Wang of acting in a "*per se* dishonorable fashion" with "contempt for the rule of law"); *id.* (accusing the Court of "racialized judicial activism"); *id.* at 5 n.5 ("It is not the case that the Plaintiffs are in contempt of court, but it is true that the Court has demonstrated contempt for the Constitution."); *id.* 6 n.6 ("[Judge Wang] is not a normal judge * * * gay marriage is baby [*sic*] of judicial policy making and judges like [Judge Wang] will defend that

2

manifestly reflect a willful violation of the Court's Order, and also violate

D.C.COLO.LCivR 7.1(i), and are therefore subject to being stricken and sanctioned.

However, to avoid expending further resources on re-filed motions, the Court will

briefly address Sevier's Motions on their merits—or rather, the lack thereof. After sifting

---

baby from being aborted"); *id.* at 6 n.8 ("[Judge Wang] . . . knows that there was no basis for [her actions] . . . . other than her own verified personal corruption and dishonorable immorality."); *id.* at 7 (accusing Judge Wang of "unethical and corrupt judicial activism"); *id.* at 8–9 ("Both the Magistrate and the District Court have engaged in conduct . . . because of reasons that are utterly implausible."); *id.* at 8 n.11 ("This is why in the media, the Plaintiffs commonly refer to [Judge Wang] as 'Magistrate W[ro]ng' and respectfully recommend . . . that she employ her own personal publicist to defend her in the court of public opinion."); *id.* at 9–10 ("The only thing that Magistrate Wang has been 'developing' . . . is a pattern of judicial misconduct."); *id.* at 10–11 ("Neither [Judge Wang] nor [the undersigned] are sincerely interested in 'ensuring' the 'development of the law.' They are, however, interested in using government to justify their own personal religious worldview in the off chance that they feel less inadequate for banking their own identity on a doctrine that is at best asinine, if not . . . 'removed from reality.'"); *id.* at 12 (accusing Judge Wang, yet again, of "demonstrable judicial misconduct and activism"); *id.* (describing the Court's case management as "a carnival side show act," and "us[ing] procedure to defend [the undersigned's] private religious moral code"); *id.* (promising "The [*sic*] are a ton of organizations that intend to file amicus brief," and accusing the Court of "intimidation tactics," and "unethical activism"); *id.* at 12 ("There is no question that this Court is an enemy of free speech."); *id.* at 12 (repeating the accusation of "intentional judicial misconduct"); *id.* at 13 (accusing the Court of "directing a series of empty and meritless threats toward the Plaintiffs' [*sic*]" and "dream[ing] up ways to shut down the Plaintiffs' speech"); *id*. at 13 (accusing the Court of "converting the bench into its own personalized make-shift legislature"); *id.* at 14 (threatening that Judge Wang "must . . . pray that the Plaintiffs do not press Senate Judiciary to impeach her for cause"); *id.* at 14 (repeating the claim of "outrageous judicial activism"); *id.* ("There is no other way to describe Magistrate Wang other than completely corrupt and worthy of impeachment."); *id.* ("If the District Court Martínez has a personal emotional problem with the evidence, then that Judge Martínez is unfit to preside."); *id.* ("Unlike Magistrate Wang, the Docket sheet does not lie."); *id.* at 15 ("at every opportunity [Judge Wang] has intentionally attempted to obstruct justice"); *id.* ("At every turn Magistrate Wang has maliciously engaged in this kind of abuse of process, waste, fraud, and mismanagement. Magistrate Wang is using the bench to conduct her own private religious jihad"); *id.* (threatening that "the Plaintiffs will press Congress for responsiveness and demonstrate to this Court the politics of quid pro quo in Washington with convincing clarity"); *id.* ("the District Court is not taking integrity seriously"); *id.* ("This Court has cross [*sic*] a new line and has been 'at obstruction of justice.' There is no nice way of saying it."); *id.* at 16 ("The Magistrate is doing the District Judge Martínez dirty bidding * * * Congress should impeach them both."); *id.* at 16 ("this court . . . has been completely unhinged and unethical"); *id.* ("the State of mind of this Court is one of unadulterated bias"); *id.* ("Sevier dares this Court not to grant this motion for failing to do so might likely compel the next case management conference to take place in the District Columbia [*sic*] before a different branch.").

3

through Sevier's 30 full pages of repetitive accusations—and overlooking his comical abuse of lengthy and tangential footnotes violative of both the Court's page limitations and its prohibition against "verbose, redundant, ungrammatical, or unintelligible" motions, D.C.COLO.LCivR 7.1(i)—Sevier's arguments are reducible to two objections, both meritless.

Sevier's overarching argument attacks case management actions taken by the Court with which he disagrees, claiming they reflect bias or misconduct. Without belaboring the issue, there has been no error in Judge Wang's handling of these cases, much less anything that supports Sevier's accusations of bias and misconduct. The Court has already rejected Sevier's oft-repeated objection to Judge Wang's Order striking Plaintiffs' motions for summary judgment, and there was no error in this action. (ECF No. 80 at 4–6.) Sevier's other complaint is that Judge Wang somehow erred when she entered an Order to Show Cause cautioning Plaintiffs Kohl and Harley that failure to appear as ordered at a status conference could lead to dismissal without prejudice for failure to prosecute. (ECF No. 72.) This was entirely proper under Federal Rule of Civil Procedure 41(b) and D.C.COLO.LCivR 41.1. Clearly, Sevier believes in the rectitude of his own view that he should be permitted to act on behalf of the other *pro se* Plaintiffs in this action. But, just as clearly, since it is undisputed that Sevier is not legally permitted to practice law, Sevier's view is wrong.[4] *See, e.g.,* 28

---

[4] Sevier, who often describes himself as "a former Judge Advocate General, Assistant United States Attorney," was licensed to practice law in Tennessee but has not been admitted in this Court. Although the other Plaintiffs recite the view that Sevier is "an immensely capable zealous advocate and attorney" and "beyond capable of practicing law" (ECF Nos. 66, 68), this view is not shared by the Supreme Court of Tennessee, which has adjudicated that Sevier is "incapacitated from continuing to practice law by reason of mental infirmity or illness" and

4

U.S.C. § 1654; *Flymbo v. State Farm Fire & Cas., Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Silvious v. Coca-Cola Co.*, 893 F. Supp. 2d 233, 236 (D.D.C. 2012) ("it is long established that a *pro se* litigant generally cannot represent the interests of other individuals, and the federal courts have consistently rejected attempts at third-party lay representation" (gathering sources) (internal quotation marks and citations omitted)); D.C.COLO.LAttyR 3(c) ("An attorney who is not in good standing shall not practice before the bar of this court."); *cf. Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) ("A [criminal] defendant has no right . . . to an attorney who is not a member of the bar.").

In any event, even if Sevier could point to some error or undue harshness in the Court's rulings (which he cannot), this provides no basis for disqualification. It is well-established that "[a]dverse rulings alone are insufficient grounds for disqualification, as is evidence that the judge criticized or was angry with a party." *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1501 (10th Cir. 1994) ("*Ready Mix*").

Sevier's other argument for disqualification is his claim that both Judge Wang and the undersigned are biased against the Plaintiffs, due in large part to a perceived

---

placed him on "disability inactive status," meaning he "cannot practice law." See Order, *In Re: Mark Christopher Sevier, BPR #26577*, No. M2011-02608-BPR-BP (Tenn. Dec. 19, 2011).

On the present record, it is seems indisputable that Sevier has engaged in the unauthorized practice of law in this matter by representing the other *pro se* Plaintiffs (at least until the time when separate counsel appeared on their behalf, and perhaps thereafter). The fact that Judge Wang refused to turn a blind eye to Sevier's own misconduct and sought to ensure that the other Plaintiffs were willingly and actively participating in these actions hardly reflects bias.

5

alignment with the American Civil Liberties Union. Notwithstanding the fact that the ACLU is neither a party nor involved in these cases in any way, Sevier still seems to view it as a lurking bogeyman, the mere mention of which should, in his view, result in *per se* judicial disqualification.

Suffice to say, Sevier's argument is unsupported even by any factual *allegation* that either the undersigned or Judge Wang have any present or improper affiliation with the ACLU. The very general comments attributed to Judge Wang in a bar magazine interview nowhere mention the ACLU and have nothing to do with any party, lawyer, or legal issue in these actions. Likewise, Sevier's reliance on reporting in *The Atlantic Monthly* from the time of the undersigned's Senate confirmation in 2011, at the most reflects Sevier's own social and political views (and perhaps those of then-Senator Sessions), but neither reflects "new evidence," as Sevier claims, nor purports to reflect any statement or view of the undersigned. (*See* ECF No. 94 at 9–11, 15–16.) Sevier's claims raise, if anything at all, "the merest unsubstantiated suggestion of personal bias or prejudice," making recusal inappropriate. *United States v. Wells*, 873 F.3d 1241, 1251 (10th Cir. 2017).

Sevier's argument is also unsupported by any legal authority. The relevant inquiry under § 455(a) is "whether a reasonable factual basis exists for questioning the judge's impartiality." *Wells*, 873 F.3d at 1251. Even if Sevier's argument had raised any factual basis, no authority suggests an attenuated or past connection to a non-party organization requires recusal in cases where issues arise on which the organization takes positions. *See Wells*, 873 F.3d at 1253 (finding "no case . . . even suggesting

6

that recusal is required" where judge who presided over criminal trial was personal friends with lawyer for an advocacy organization that opposed the protest activity for which defendant was convicted); *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 91 (D.D.C. 2011) ("a judge's past membership in organizations that advocate for positions advanced by a party does not necessarily require recusal" (collecting cases)), *aff'd*, 758 F.3d 265 (D.C. Cir. 2014); *cf. Perry v. Schwarzennegger*, 630 F.3d 909 (9th Cir. 2011) (Reinhardt, J.) (recusal not required in challenge to state ballot measure related to same-sex marriage on grounds that judge's wife was executive director of the ACLU of Southern California; "the organization . . . not having participated in any filings before this court, has no more to gain from the outcome . . . than any other person or entity with strong views on the subject but not directly involved with the litigation").

Finally, Sevier's Motions were filed months after these actions were initiated, and after Plaintiffs had made numerous prior substantive filings, but almost immediately after the Court's Orders on Pending Filings and Case Procedures. (*See* ECF Nos. 80, 94.) This confirms that Sevier's claims have nothing to do with any good-faith claim of bias, and everything to do with Sevier's displeasure with the Court's rulings. This defeats Sevier's argument for disqualification. *Ready Mix*, 14 F.3d at 1501; *Perry*, 630 F.3d at 916 ("each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision" (quoting legislative history of § 455)). Moreover, Sevier's present Motions confirm Plaintiffs' own frequent representations to the Court—often conveyed

as threats—showing that Plaintiffs are engaged in blatant judge-shopping.[5] This even further calls for Sevier's Motions to be rejected. *See Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (§ 455(a) is not "intended to bestow veto power over judges or to be used as a judge shopping device. . . . a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require").

\* \* \*

For the reasons set forth above, Sevier's "Motion to Recuse the Magistrate and Motion to Reassign" filed in Case No. 17-cv-1750-WJM-NYW (ECF No. 94), and his "Motion to Recuse the Magistrate" filed in Case No. 17-cv-1666-WJM-NYW (ECF No. 90) are both DENIED.

Dated this 16th day of January, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge

---

[5] Plaintiffs' own admissions of judge- and forum-shopping include, for example, Plaintiff Gunter's threat that "Judge Martínez needs to understand . . . that the Plaintiffs are filing this same cause of action in the Southern States before Courts with justices who think like Justices Thomas and Scalia . . . . any abuse will likely prove to be an occupational health hazard." (ECF No. 32 at 4.) Sevier has similarly represented: "within the next couple of weeks, the Plaintiffs will have a least [*sic*] 12 lawsuits on these kinds of matters before all 12 circuits, so this Court should best not perpetrate the occupational health hazard of engaging in even a hint of judicial activism," and that *"*If the Plaintiffs were to move this case to another state . . . that would be a bad look for the District of Colorado." (ECF No. 40 at 13 n.5; ECF No. 53 at 5.)